*—New—*

*— AMENDMENT —*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA HAMPTON,         )
         Plaintiff,)
         )
         )
         )
v.         )    Civil Action No. 1:19-CV-751
         )
         )    FEDERAL CIVIL RIGHTS COMPLAINT
         )    (BIVENS), 2 of Them
G. Jones, Mr. Hoffman, Mr. Newheart,)    AND SUPPLEMENT COMPLAINT
~~Mr.~~, ~~~~, Mr. Hicks,    )
Mr. Drick, J. Ayers (Nurse), and    )
Warden David J. Ebbert.    )
         Defendants.)

FILED
SCRANTON
SEP 17 2019
PER
DEPUTY CLERK

## I.
### JURISDICTION

    This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics**, 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to Title 28 U.S.C §1331 and 2201.

## II.
### PARTIES

    A. **PLAINTIFF:** Joshua T. Hampton, Inmate Number: 31575-160, Address: Federal Correctional Institution Jesup, 2680 Highway 301 South, Jesup, GA 31599.

## III.
### ADMINISTRATIVE REMEDIES PURSUANT TO THE BIVENS CLAIM

    A. Plaintiff filed his 2) BP-8 Informal Resolution, 2) BP-9 Administrative Remedy (Warden Level), 2) BP-10 Remedy (Regional Level), and 2) BP-11 Remedy (Central Office Level). See Exhibit copies of all grievances that were filed attached to complaint.

    B. **DEFENDANTS:** G. Jones, Mr. Hoffman, Mr. Newheart,      , Mr. Hicks, Mr. Drick, J. Ayers (Nurse), and Warden David J.Ebbert. These Defendants are sued in their "Individual Capacities" concerning the events described herein in this complaint and Supplement Complaint

1

## IV.

### DEFENDANTS

**1.** The United States is a Defendant and is sued in it's "Official Capacity" concerning the events described in this complaint, and in their "Individual Capacity" for violating Plaintiff's Eighth Amendment Rights.

## V.

### STATEMENT OF CLAIM UNDER THE (FTCA)

**Claim I:** Plaintiff Hampton brings this claim against the United States pursuant to 18 U.S.C §4042 (failure to protect from harm). Plaintiff will assert that the United States acting by and through prison officials caused him physical and mental harm by willfully threatening him to spray "Oil Based POLYURITHANE" on finished wood products such as: desks, tables, and prison officials' personal items. Plaintiff was given direct orders to use an "OIL BASED POLY SPRAYER", and if he did not comply, he would be written an incident report and sent to Solitary Housing Unit ("SHU"). Plaintiff's job/duty assignment was "never" to use a sprayer of any type, but his job duty was to build desks, tables, and personal items for prison staff members.

Plaintiff Hampton avers that he was given continual direct orders and threatened to use the sprayer to spray the OIL BASED POLYURITHANE from the relevant times of January 4, 2017 -through- July 23, 2018 (approximately 17 months), and within this time frame Plaintiff unknowingly contracted severe, serious damage to his lungs and respiratory restriction of air flow concerning his breathing process of 17% air flow in and out. Plaintiff "may" have cancer from this overexposure to harsh and dangerous chemicals, but is not sure, due to the fact that F.B.O.P medical staff will not address the issue or give him the test to find out whether or not he has cancer from the extreme overexposure to the "POLY" chemical. Plaintiff further avers that the "POLY" chemical is, and was, the factual and proximate cause of the injuries that he has sustained and stated in this paragraph (2). Also over 960 hr's exposure w/out P.P.E or Medical Approved Resporator...

2

## New AMENDMENT TO ADD:

2nd) Bivens Lawsuit Along With Supplemental Complaints

Both) "Bivens" Lawsuit to Run Parallel to Tort SF 95 Claim's
Both

**Claim I:** Violation of Eighth Amendment Right to Protection (18 U.S.C §4042) and Deliberate Indifference

**Claim II:** Violation of Eighth Amendment Right to Medical Care...By Nurse P.A. J. Ayers of U.S.P Lewisburg under Warden Ebbert of 2018.

---

**Claim I:** To involve every staff member of U.S.P Lew. named in the 5pg Affidavit along with all evidence included in SF 95 Tort Claim. CMS Staff: G. Jones GM-1, ~~Mr. Stiles~~, ~~Mr. Miller~~, Mr. Newheart, and Mr. Hoffman.
Safety Staff: Mr. Hicks and Mr. Drick.

---

**Claim II:** Adding Supplemental Complaint. Please See 3pg Affidavit with Fact and Evidence sheets included in this Amendment and Supplemental Complaint... And 2nd Bivens Lawsuit of $10,000,000 mill And SF 95 Tort Claim.

Claim III 5th Due Process not Following Fed. And State law's... Nor Provideing P.P.E And Safety Osha Standereds...

Claim IV 5th Due Process Plaintiff wishes to Press Formal Curges aginst Deffendent's for. 8th Amendment Right: By giving Direct Order. To Break the Fed. Law And Clean Air Act statues.

(note) Direct Order By Staff: Is A Form of "Hiching Post" Forceing: An Inmate to Comply or Be Punished. In short "A Slave" To the will of the officer Giving the Direct Order...

3

**Claim II Part 2:** Elements. 7-11-2018 Medical Record proves that J. Ayers P.A. examined Claimant and treated him...See Treatment...Yet she failed to follow Due Process by protecting Claimant from exposure to known chemical ("MinWax Oil Base Poly) which she expressed that Claimant believes he has...ex See Medical Report.

Element 2: Deliberate Indifference by J. Ayers P.A.
Claimant states Exposure...J. Ayers P.A. states it in her Report and treats Claimant, yet she fails to inform Claimant that he is in Extreme Danger and Harmful Damage id he continues to be exposed to **Chemicals w/out Protection...**

Element 3: Deliberate Indifference ...J. Ayers P.A.
Then, without informing Safety of Chemical Exposure or by not filling out **OSHA 301 Injury Sheet...**She then sends Claimant back to work with clear knowledge that Claimant works as a Chemical Sprayer of MinWax OIL BASED POLY and that he will be exposed again to the harmful chemical...

Element 4: Because J. Ayers P.A. acted with Deliberate Indifference, by sending inmate Hampton (Claimant) back to work, she willingly and willfully exposed Claimant to Extreme Over Exposure to a Dangerous Chemical (MinWax OIL BASED POLY) and caused more harm to be done to Claimant's lungs and body, when J.Ayers P.A. could have placed Claimant on Medical Leave, thereby also causing mental torment and fear.

4

8th Admendment
Violation

18 USC 4042 And th
5 Amendment

Deliberate Indifference By Medical
P.A J. Ayers Nurse

**AFFIDAVIT**

I, Joshua Hampton #31575-160, so solemnly swear under the Penalty of Perjury, that the foregoing information is True and Correct to the best of my knowledge and belief...

On 7-11-18, while being housed at U.S.P Lewisburg, I was in the Big Spray Room spraying MinWax Oil Based Poly. Under Direct Orders of Officer G. Jones...At or around 9:00 a.m. I had an issue breathing. I panicked... due to the fact of the inability to breath... And I ran for the hallway door... At that point I knew that something was very wrong, so I went to Medical (the Clinic)... on the very next move. Against the Direct Orders that I'd been given by G. Jones and other staff members. Once at Medical, I was seen by Jessie Ayers, P.A. She inquired as to where I worked, at which time I told her (GM-1 The Workshop). She then asked me what my (Job Assignment) was. I informed her that I was the Polyurithain Sprayer, the one who sprayed the final coats on the (Wood Stuff for the Prison), such as desks, flag boxes, cornholers and all the stuff for the auction, along with personal frames and clock Towers for staff.

She then asked me how long I had been working. I told her 17-18 months. She then asked me how long I've had the breathing issue. I told her 2-3 months. She then asked me to blow into a long tester (Please see Medical Records). I then informed her about collapsing to my knees trying to breath before I panicked and ran for the hallway door while I was in the hallway experiencing a coughing episode and sneezing fit, where I began tasting something strange in my mouth like a chemical. She then asked me if I had a respirator-- in which I replied that I was never told by staff nor Safety that I needed one, nor was I ever issued one for the job. She then administered another test, prescribed me some pills (Prednisone 20mg), and then sent me back to work. At no time did she offer me a Lay-In from work, nor did she file the Chemical OSHA 301 Report, nor did she inform the Warden David, nor did she inform Safety about the use of sprayers w/out respirators. I then returned back to work and began working, which was spraying (MinWax Oil Based Poly).

1

On 7-23-18, I was taking Dr. Edinger his personal picture frames. I then informed him that I was still having chest discomfort, trouble sleeping, and migraine headaches almost everyday for 1 to 3 hours. He then asked me as to what I did in GM-1 other than make wooden desks and personal items for staff. I told him that I spray (MinWax Oil Based Poly). His very next question was, "Do you have a respirator?" I told him no, I never was informed by staff, nor Safety, nor Medical that I needed one. He then Gave me another more personal test. To my knowledge, he never reported it, but as of right now 6-3-19, I don't have all of my Prison Medical Records. It should be noted that Ms. Miose and P.A. Ayers were in and out of the testing room where Dr. Edinger was giving me a breathing test. This test started around 3 p.m. and ended just before the 4 p.m. count.

After the test, I Felt safe to tell Dr. Edinger about the threats of **BODILY HARM** from staff members (G. Jones, Supervisor) and Newheart), and the threat was that I would be beaten to the point where I needed more than just Medical if I ever reported the fact that they were using a spray-gun in a spray-booth.

Due to the threats by staff, I told Dr. Edinger that he needed to protect me from the staff and the Warden David Ebbert. He looked at me and told me that he would just put me on a Lay-In so "they" wouldn't know about my medical issues. Please see Dr. Edinger's Medical Report).

Now that I'm at F.C.I Jesup I have made my case known to the Medical Staff here, Safety, and Lt. Thomas, SIS. I've shown them the report from Medical along with picture evidence. They refused to allow me to make a Formal Complaint. The C.M.C lady, Ms. Chalfant and the Notary Public also refused to notarize any papers that I had, or picture evidence. I have not had any more treatment for my exposure to the chemical MinWaax Oil Based Poly. My symptoms have gotten worse and I have been to Medical 3 times. They refuse to take my statement about my lung issues. I no longer feel safe at F.C.I Jesup due to the fact of retaliation by the Medical Staff and Custody.

At no time did Dr. Edinger report the threats made against me, nor did he ever report the Chemical Exposure, nor did he file an OSHA 301 Report. He also never tested me for the Chemical Exposure, knowing full well that I had (No Respirator) while spraying MinWax Oil Based Poly. Dr. Edinger also knew full well that the chemical was being Misused by being sprayed through a spray-gun.

Both Nurse Ayers and Dr. Edinger were both informed that I was spraying Poly, yet when given the opportunity, neither of these individuals (F.B.O.P Medical Staff) informed anyone of where claimant worked, nor did they inform anyone that I needed to be cleared by Medical in order to use such a spray-gun and chemicals such as MinWax Oil Based Polyurethane.

Jesup Medical Staff:
AHSA - Ms Loveless
AHSA - CDR Deleou
A. Griffis Nurse
L. Drury Nurse

B. AREMU

Not Included in this 1:19-CV-0751

History Only For Civil suite aginst F.C.I Jesup. Near Future...

6-6-19   Joshua Hampton #31575-160

3

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | HAMPTON, JOSHUA | | Reg #: | 31575-160 |
| Date of Birth: | 10/04/1979 | Sex: M Race: BLACK | Facility: | LEW |
| Encounter Date: | 07/11/2018 10:14 | Provider: Ayers, Jessie PA-C | Unit: | H02 |

Mid Level Provider - Sick Call Note encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**     Provider: Ayers, Jessie PA-C

**Chief Complaint:** Breathing Problems

**Subjective:** Inmate states he has been "more aware of his breathing over the last 2 weeks and is getting concerned because he does not feel like he can take a deep breath and has been waking up feeling short of breath". Inmate states he works with chemicals at his job and isn't sure if he inhaled something he shouldn't have.

**Pain:** No

**OBJECTIVE:**

**Respirations:**

*[handwritten: not Normal For my Age And Build]*

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 07/11/2018 | 10:49 LEW | 16 | Ayers, Jessie PA-C |

**Wright Peak Flow:**

| Date | Time | Attempt 1 | Attempt 2 | Attempt 3 | Effort | Bronchodilator | Provider |
|---|---|---|---|---|---|---|---|
| 07/11/2018 | 10:49 LEW | 250 | 275 | 200 | Fair | Without | Ayers, Jessie PA-C |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 07/11/2018 | 10:49 LEW | 98 | Room Air | Ayers, Jessie PA-C |

**Exam:**

**General**

**Affect**

Yes: Pleasant, Cooperative

**Appearance**

Yes: Appears Well, Alert and Oriented x 3

No: Appears Distressed

*[handwritten: She Allowed me to keep working And Spraying Chemical oil BASE Poly.]*

**Eyes**

**General**

Yes: Extraocular Movements Intact

**Pulmonary**

**Observation/Inspection**

No: Respiratory Distress

**Auscultation**

No: Crackles, Wheezing

*[handwritten: Evidence]*

**Cardiovascular**

**Observation**

Yes: Within Normal Limits

**Auscultation**

Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2

## ASSESSMENT:

Unspecified abnormalities of breathing, R069 - Current

## PLAN:

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | predniSONE Tablet | 07/11/2018 10:14 | Orally(1) 60 mg - daily x 3 day(s) — *** (2) 40 mg - daily x 3 day(s) — *** (3) 20 mg - daily x 3 day(s) — |

Indication: Unspecified abnormalities of breathing

**New Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Chest-2 Views | One Time | | 07/12/2018 | Routine |

Specific reason(s) for request (Complaints and findings):

shortness of breath

## Disposition:

Follow-up at Sick Call as Needed

## Other:

Chest X-ray obtained today. Inmate started on oral steroids to see if this improves his symptoms. If symptoms continue or worsen will place order for sleep study and possible PFT for new onset asthma/COPD.

Patient allergies reviewed and updates applied during this visit if indicated. See Chart: Allergies for most recent patient allergy list.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 07/11/2018 | Counseling | Plan of Care | Ayers, Jessie | Attentive |

Copay Required: No          Cosign Required: No

Telephone/Verbal Order:  No

Completed by Ayers, Jessie PA-C on 07/11/2018 10:55

# Affidavit

I, Joshua Hampton (claimant) swear under the penalty of perjury, that the foregoing information is true and correct, to the best of my knowledge and belief

## Unreasonable Risk Of Exposure

Claimant contends that it is the responsibility of the United States government, to provide a safe and healthy environment - free of unreasonable risk.

Claimant aver that the U.S. government through its employees - failed in their responsibility to claimant for the following reasons:

1. During the first week of January 2017, claimant was hired to work in the institution's "C.M.S" department;

2. On or about January 4, 2017, claimant was informed by his employer - that he was assigned to work as a "Polyurethane Sprayer" - and that if he had any questions, to refer to inmate Archer who was the #1,

3. On or about February 2017, ~~crossed out~~

while preparing for an "in-house inspection — claimant was approached by GM-1 (Jones) who advised claimant, that if asked, to say that the wood shop does not have a spray booth or spray guns — that the wood shop does not spray at all.

4. On or about March 2017, another "in-house inspection" was conducted — at which time C.M.S. AW (Newheart) advised me that if I was asked whether or not we used Polyurethane — that I was to reply, that we brushed it on, not spray. He added that his instructions to me were a direct order;

5. On or about Aug. - Oct. 2017, a "pre required inspection" (PREA) was conducted. Asst. AW (Hoffman) personally advised me to never say anything about the two spray rooms, and that we only used brushes to apply Polyurethane. He further added the his instructions to me were a direct order;

6. Approximately two weeks later, I was then approached by AW of Safety (Hick) who requested that I build personal "Penn State Cornholers" — and be sure that I spray oil based Polyurethane on them. I was also ordered

AW of Safety (Drick) to build a few sets 3 of 5 of Cornholers for him — and to be sure to spray oil based Polyurethane on those as well; Also C.M.S. officers Miller and Allen requested that I spray all the 22 Office desks, cabinets, and other personal items such as deer antlers and mounts with Polyurethane;

7. On or about March of 2018, I began to experience very severe ▓▓▓ headaches;

8. On or about June 2018, I began waking up out of my sleep with a sore throat, gasping for air (shortness of breathe) and memory lost. I complained to GM-1 (Jones) that I needed to go to medical to no avail. Instead informed me that he was not going to contact medical — and that if I went to medical on my own, that I would no longer need medical, but instead, a hospital; (See Ex.  )

9. On or about July of 2018, I saw health provider (Edinger) about three items he wanted me to make for his office. It was at this time that I informed him about the direct orders of speaking to anyone about my spraying of Polyurethane. (See Ex.  ) I further explained to him that Mr. Hoffman

(C.M.S.), Mr. Neicheart (C.M.S.), Mr. Jones (C.M.S.), Mr. Allen (C.M.S.), Mr. Miller (Safety), Mr. Hick (Safety), Mr. Drick (Safety), As well As the warden. All knew of my spraying of Polyurethane the entire time. That I had sprayed Personal items for both the Warden And Captain;

10. I sprayed Polyurethane 4 days out of A week. I would spend 30 to 45 minutes each time I sprayed. I would spray twice in the morning, and twice in the Afternoon for 18 months. This is what I was hired to do - to spray Polyurethane on the Personal items I built for staff. At times when I became sick I was not Allowed to leave work.

## Unreasonable Risk Of Exposure

1. The U.S. government through its employees, breached its mandated duty And became Negligent, by failing to properly train claimant in the use of respiratory equipment;

Claimant contends that as a cautionary measure - claimant was to be properly trained in the use of respiratory equipment, when given A direct order to spray Polyurethane

(in which he complied) on the personal items he built for staff, in the wood shop in U.S.P. Lewisburg. Claimant aver that he was never given such training. See Ex.

2.) The U.S. government through its employees, breached its mandated duty and became negligent, when it failed to enforce the mandatory requirement that claimant wear adequate protective gear i.e., respiratory equipment.

Claimant contends that as a custodial measure, the government was duty bound, to have claimant wear respiratory equipment when forcing him to spray polyurethane on personal items he built for staff members.

Claimant aver that instead of placing his health and safety first and foremost that the government instead offered threats of retaliation to ensure their own gain and well being.

# Deliberate Indifference

**Element**

"MinWax" Oil Based Polyurithane, Used for Floors...

**Fast Proving Element**

7-11-18 Claimant suffered from a coughing/sneezing attack while tasting a chemical in his mouth from spraying chemical s by way of a paint sprayer with 80℔ Air Psi...

**Known Evidence**

"MinWax" Floor Oil Based Polyurithane states on Caution Label: Intentional Misuse by deliberately concentrating and inhaling the contents can be harmful or fatal. This product is not meant to be used in an air sprayer or paint sprayer...See Attachment.


**CMS**

G. Jones of Woodshop GM-1

**Fast Proving Element**

Gave Claimant a direct order to spray Oil Based "MinWax" Poly on prison desks, Cornholes, and personal items for staff members over 5 times...

**Known Evidence**

Please See Exhibits...

G. Jones of GM-1 Woodshop

**Fast Proving Element**

Never gave Claimant the P.P.E gear to work with chemicals...The label on the can of "MinWax" Oil Based Poly states: Vapor Harmful to Eyes, Skin, and Respiratory Tract...

**Known Evidence**

Please See Exhibits... It is clear on the safety sheets that Claimant has to be cleared by Medical in order to use a Respirator.

G. Jones of GM-1 Woodshop

**Fast Proving Element**

Hired Claimant on 1-4-17 and Claimant worked through 7-23-18 (17 months) and he never did give Claimant Safety P.P.E Gear.

**Known Evidence**

Please See Medical Records...No Respirator Test...

G. Jones of GM-1 Woodshop

**Fast Proving Element**

Knew that the Chemical "MinWax" Polyurithane was harmful because he told Claimant to keep his back door shut because the fumes gave him headaches.

**Known Evidence**... Please See Picture of Taped Door.

# Deliberate Indifference

### Element
G. Jones of GM-1 Woodshop
### Known Fact
Gave Claimant direct orders to never say anything to anyone or Medical about the use of spraying Oil Based Poly...
### Evidence
Please See Affidavit and statements from inmates Archer and Kirbby who also worked in GM-1 during the same time as Claimant.

Mr. Newheart, A.W. of CMS
### Known Fact
Gave me a direct order to never say anything to anyone about the use of Air Spray Guns or the 2 spray booths if asked during inspections.
### Evidence
Please See Witness' Statements and Claimant Affidavit...

Mr. Hoffman, Ass. A.W. of CMS
### Known Fact
On or about Aug-Oct of 2017 during a "Prea Required" Inspection, He gave Claimant a direct order to "Not Speak of Spray Booths or Spray Guns"...
### Evidence
Please See Witness' Statements and Claimant's Affidavit...

Mr. Hicks of Safety
### Known Fact
Requested that Claimant build him personal Penn. State Cornholers, and to be sure that Claimant sprayed "Oil Based Poly" on them, and remember to never say anything about the Spray Booths or the Spray Guns.
### Evidence
Please See Exhibits...

Mr. Drick of Safety
### Known Fact
Gave Claimant a direct order to build him personal Cornholes along with the other staff. Inmate Archer and myself (Claimant) were already building for auction and to spray everything with "Oil Based Poly."
### Evidence
Please See Pictures and Inmate Pay Sheets because inmate Archer and Claimant were being paid by Safety to build personal items for staff members...

Warden D. Ebbert

**Known Fact**

Also came down to pick up personal picture frames and once again told Claimant about the fact that "we don't spray Oil Based Poly on anything at U.S.P Lew."

**Evidence**

Known knowledge of Claimant being directed to spray "Oil Based Poly"...See Exhibits and Pictures, and witness' statements.


**Element**

Serious Medical Need

**Facts Proving Elemtent**

7-11-18 Claimant began coughing and sneezing and gasping for air...dizziness and the tasting of chemicals in Claimant's mouth.

**Known Evidence**

Health Services Clinical Encounter on 7-11-18 Provider: J. Ayers P.A., Jessie P.A.-C. Facility: USP Lewisburg


**Element**

Officials' Knowledge of Need

**Facts Proving Element**

7-11-18 Claimant told Health Services J. Ayers P.A. about spraying "Oil Based Poly". J. Ayers asked Claimant if he had a respirator. Claimant said "No"...J. Ayers did not give Claimant Medical Lay-In, but sent him back to work in the same conditions.

**Known Evidence**

7-11-18 to 7-23-18 Claimant had to continue working with "Oil Based Poly" until Dr. Edinger, Andrew MD/CD restricted him from GM-1 Woodshop.


**Failure to Provide Treatment**

J. Ayers P.A. provided Claimant with Prednisone 20mg, yet did nothing to prevent Claimant from being exposed further to "MinWax" Oil Based Polyurithane by placing Medical Lay-In on Claimant.

**Known Evidence**

P.A. J. Ayers' Clinical Encounter on 7-11-18

**Element**

Causation and Injury

**Facts Proving Element**

Because P.A. J. Ayers did not follow Due Process and acted with Deliberate Indifference.

**Known Evidence**

Claimant was sent back to work where he was again under orders to spray: "MinWax Oil Based Poly"... by doing so, J. Ayers P.A. personally carried out more injury and damage to Claimant causing pain and a mental state of Hopelessness and Extreme Fear...

All: Exibits And Attachments are in Original Case File... Note, I'm in the Shu B/c An C/o Case mang. Mr. Harrison Threatened me. I no longer have Any Right or ability to Make Copys... Or work At "will" on this Case... Here At F.C. I Jesup. GA, 31599

OMB NO. 1105-0008

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and ZIP Code) |
|---|---|
| *No-theast Regional Office* U.S. Custom House, 7th Floor 2nd and Chestnut St Philadelphia, Pennsylvania 19106 | 2680 Hwy 301 south, Jesup, GA 31599 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 10-4-79 | N/A | Jan 2017 / July 2018 | VARY |

8. Basis of Claim (State in detail the known the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

N/A

9.

PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and ZIP Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on the reverse side.)

N/A

10.

PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

*See Attached Affidavit 14th 5 pages*

11.

WITNESSES

| NAME | ADDRESS (Number, street, city, State, and ZIP Code) |
|---|---|
| See Attached Affidavit Pg 3 and 4 Pg | USP Lewisburg P.A. P.o Box 1000 Lewisburg, P.A 17837 |

12. (See instructions on reverse)

AMOUNT OF CLAIM (In dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| N/A | $2,000,000 °° | N/A | $2,000,000 °° mill |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on revere side.) | 13b. Phone Number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| *Joshua Hampton* #31575-160 | N/A | |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

75-109
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes, if yes, give the name and address of insurance company (Number, street, city, State, and ZIP Code) and policy number. ☒ No

N/A

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

N/A

17. If deductible, state amount

N/A

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (It is necessary that you ascertain these facts)

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes, if yes, give name and address of insurance carrier (Number, street, city, State, and ZIP Code) ☒ No

N/A

| CLAIM FOR DAMAGE, APPROVED INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM OMB NO. 1105-0008 |

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and ZIP Code) |
|---|---|
| Northeast Regional Office U.S. Custom House, 7th Floor 2nd and Chestnut St Philadelphia, Pennsylvania 19106 | Joshua Hampton #31575-160 Fed. Inst. Correct. 2680 Hwy 301 South, Jesup, G.A. 31599 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 10-4-79 | None | 7-11-18 | AM |

8. Basis of Claim (State in detail the known the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

n/a

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and ZIP Code)

n/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on the reverse side.)

n/a

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please See Attached Affidavit And Exibits

11. **WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and ZIP Code) |
|---|---|
| P.A. Jessie Ayers Medical Nurse | USP Lewisburg P.A, PO Box 1000 Lewisburg, P.A. 17837 |

12. (See instructions on reverse) AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| N/A | $10,000,000.00 mill. | N/A | $10,000,000.00 mill. |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on revere side.) | 13b. Phone Number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Joshua Hampton #31575-160 | n/a | 6-16-19 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

75-109
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes, if yes, give the name and address of insurance company (Number, street, city, State, and ZIP Code) and policy number. ☒ No

N/A

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

N/A

17. If deductible, state amount

N/A

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes, if yes, give name and address of Insurance carrier (Number, street, city, State, and ZIP Code) ☒ No

N/A

SF 95 (Rev. 7-85) BACK

**NEW WITNESSES TO ~~Both~~ BIVENS LAWSUITE**
**AND TO ~~Both~~ SF 95 TORT CLAIM** *And Supplement Complaint*

**Claim I:** CMS Paint Supervisor Mr. Harpster
CMS Elec. Mr. Fisher
CMS Main Tool Room of Inst. Mr. Crawly
CMS Plumbing Supervisor Mr. Larson
*Chaplain Ayers*

*CMS. Construction*
*Mr. miller And Mr. Allen*

**Claim II:** Dr. Edinger
**Element I:**

Dr. Edinger had full knowledge of Claimant's condition by way of P.A. Ayers' Report of Exposure...to Chemical...7-23-18.

**Element II:**

Dr. Edinger tested Claimant at U.S.P Lew and sent him to an outside hospital on **10-4-2018** for testing. Yet, at no time did he ask Claimant to fill out a **301 OSHA** Injury Survey, nor did Dr. Edinger fully state the true state of events that were still ongoing at U.S.P Lew (Lewisburg) from 7-23-2018 until 10-4-2018. During that same time span two other inmates were exposed to the same chemical. Due Process and Deliberate Indifference violations by Dr. Edinger are also true and provable by evidence, yet Claimant only requests his statement to the facts of P.A. Ayers' actions dealing with inmate Hampton (Claimant) along with the fact that he had clear knowledge of Claimant's job as an Oil Based Poly Sprayer...

1

# Evidence

To: Osha
From Hampton ✓
#35575-160
12-12-18

I Ask to Save All My Personal

Rights To Seek money Due to All the

Unreasonable Risk I was Put through

At USP Lewisburg.

    I am Also Requesting Proper

Forms And Directions from Osha:

General Counsel: Due to the lack of

Law Education that I Have...

    Including OSHA 301 Injury and Illness

Incident Report.

    At the Same time I would like

to Submit this As A Formal

# Evidence

Unreasonable Risk Violation To

m/y Health And Future Health ...

Also OSHA Violations Made By

Warden of USP Lewisburg.

: David J. Ebbert warden...

Including : Clean Air Act

Respiratory Protection Program

OSHA Standard 29 CFR 1910.134

Also not Providing me w/ PLHCP

Violation of Hazard Communication

Osha Standard 29 CFR 1910.1200

Also Violation of Toxic And Hazardous
Substences And Lead

29 CFR 1910.1000 of OSHA

# Evidence

Pg3   Also Violation of 29 CFR 1910.107

And NFPA 33

Violation of Air Emissions no

Info or Safety Info... to Protect myself.

Along w/ other Violations unable

to list Due to lack of legal aid.

12-12-18   Joshua T Hampton

**U.S. Department of Labor**

Occupational Safety and Health Administration
Wilkes-Barre Area Office
7 North Wilkes-Barre Boulevard, Suite 410
Wilkes-Barre, Pennsylvania 18702-5241

Phone: (570) 826-6538
Fax: (570) 821-4170



December 18, 2018

US Dept. of Justice
UNICOR, USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

*Evidence*

RE: OSHA Complaint #1410056

Dear Employer:

On December 18, 2018, the Occupational Safety and Health Administration (OSHA) received a report of alleged hazardous working conditions and/or violations of 29 CFR Part 1960 citable program elements in your workplace. The specific nature of the report involves:

1. Employees are exposed to particulate and solvent from the spray painting of Minwax oil and water based polyurethanes and are suffering health symptoms.
2. Respirators are not provided.

While OSHA has decided not to conduct an inspection in response to this report, you should investigate the alleged violation(s). Department of Labor regulations 29 CFR 1960.28 requires that you conduct an inspection within 3 working days for potentially serious conditions and within 20 working days for other-than-serious hazards. You should implement any necessary correction(s) within 30 calendar days after completion of the inspection. If you cannot implement corrections(s) within 30 calendar days, please provide me with a detailed abatement plan. Your plan should include:

1. All steps you took, and the dates of such action, to achieve compliance during the prescribed abatement period.

2. The specific amount of additional abatement time estimated to achieve compliance.

3. The reasons you will need additional time, including the lack of professional or technical personnel or of materials and equipment, or because your agency cannot complete necessary construction or alteration of facilities by the original abatement date.

4. Interim steps you are taking to safeguard the employees against the cited violation(s) during the abatement period.

Since the complainant has requested to remain anonymous, please advise me in writing, within 30 calendar days after completion of inspection, of your finding(s) and of any action you have taken. Please provide a detailed response and include the specific corrective action(s), if any, taken. If you determine, based on the report, no violation(s) exist and you will not conduct an inspection, please notify me in writing within 15 calendar days of receipt of this letter. We have notified the complainant that the complaint has been forwarded to you for action, and, asked the complaint to notify us I you do not correction the violation(s).  We will forward a copy of your report to the complainant.

You should enclose any supporting documentation on the action(s) taken, such as monitoring results, new equipment orders, or photograph(s) of corrected condition.

If we do not receive a response from you within 30 calendar days indicating either that you have taken appropriate action or that no violation(s) exists, OSHA may schedule an inspection.

If you have any questions or need assistance concerning this matter, please contact our office.

Sincerely,

Mark L. Stelmack
Area Director