**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSHUA HAMPTON,** | : | **Civil No. 1:19-CV-751** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Jones)** |
| **v.** | : | |
| | : | |
| **G.  JONES and JESSIE AYERS,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

<u>**REPORT AND RECOMMENDATION**</u>

### I.    <u>Introduction</u>

This case involves federal constitutional and statutory claims brought by an inmate, Joshua Hampton, who alleges that he was exposed to hazardous substances while working at the prison woodshop at the United States Penitentiary, Lewisburg Pennsylvania between January of 2017 and July of 2018. (Doc. 1). Over time during the course of this litigation, the scope of this lawsuit has narrowed significantly. Presently only two defendants remain in this case—Maintenance Worker Supervisor Gregory Jones and Physician Assistant (PA) Jessie Ayers. These defendants, in turn, face two legal claims brought by Hampton arising out of his prison industry experience and health care and USP Lewisburg—an Eighth Amendment claim under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), as well as

1

claims under the Federal Tort Claims Act (FTCA) based on his alleged improper exposure to chemicals at the prison.

The defendants have now filed a multi-facetted motion to dismiss, or in the alternative for summary judgment, which identified a host of legal obstacles to Hampton's continued pursuit of these claims. (Doc. 97). This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motion be granted and Hampton's complaint be dismissed.

II.    **Statement of Facts and of the Case**

Joshua Hampton is a federal inmate who alleges that he was exposed to hazardous substances while working at the prison woodshop at the USP Lewisburg between January of 2017 and July of 2018. In his complaint, Hampton brings claims of negligence and deliberate indifference based upon his exposure to polyurethane products in his prison industries job and asserts that prison health care providers failed to adequately address his medical concerns.

With respect to these allegations, the essentially undisputed facts[1] are that polyurethane was used in the prison woodshop as a product applied to wood flooring and other wood products as a finish to enhance the appearance of the wood and

---

[1] This statement of facts is taken from the parties' submissions to the extent that those submissions are supported by independent evidence. (Doc. 101).

shield it from damage. Polyurethane can be safely applied to wood with a sprayer, so long as the area where the polyurethane is used is properly ventilated, and personal respirators are not required to safely spray polyurethane in properly ventilated workspaces.

From January 4, 2017 until July 2018, Maintenance Worker Supervisor Gregory Jones trained and supervised Hampton at USP Lewisburg's woodshop. On January 4, 2017, Jones provided Hampton with job orientation and safety training, which included instructions on the hazards of polyurethane. Hampton was provided the option of using a respirator while spraying polyurethane, but respirators are ineffective if facial hair protrudes between the skin and the respirator, and Hampton had a beard that would interfere with the available respirators' ability to create a seal on his face.

Hampton received annual refresher training that covered similar topics as his initial job orientation and safety training and documented this training in writing. Hampton and Jones signed a standard form to document the refresher training. Hampton's exposure to polyurethane in the workplace was sporadic; he would spray polyurethane around three to five times a month for approximately 20 to 30 minutes at a time. The area where Hampton sprayed polyurethane was heavily ventilated with multiple fans and open doors.

As for Hampton's medical care, the evidence reveals that Hampton first reported to Health Services with relevant respiratory symptoms in a sick call visit with Defendant Ayers, a physician assistant, on July 11, 2018. On July 11, 2018, Hampton complained he was unable to take a deep breath and woke up feeling short of breath. He claimed his symptoms could be attributed to inhaling chemicals at work.

On examination, Hampton had sixteen respirations per minute, 98% oxygen on room air, was in no respiratory distress, was not wheezing, and had no crackles in his lungs. Ayers tested Hampton's peak expiratory flow rate (PEFR), which is a person's maximum speed of expiration, noting that Hampton gave only a fair effort during the PEFR test. Ayers then prescribed a course of oral prednisone, ordered a chest x-ray, and diagnosed "unspecified breathing abnormalities." The chest x-rays of July 11, 2018 revealed that Hampton's lungs were clear and he had no evidence of cardiopulmonary process. Ayers also noted that if Hampton's symptoms worsened, she would order a sleep study and possible pulmonary function test for new asthma/COPD.

Ayers next saw Hampton on September 10, 2018, for a complaint of throat pain. On September 10, 2018, Ayers noted that Hampton had no respiratory distress and was scheduled for a pulmonary function test. Ayers also renewed Hampton's prescription for Ibuprofen on two occasions.

4

Andrew Edinger, M.D., the Clinical Director at USP Lewisburg since 2017, also provided medical treatment to Hampton during the time period relevant to the claims alleged in the instant lawsuit and reviewed Hampton's medical records up to January 2020. Dr. Edinger saw Hampton on July 23, 2018, at which time he reported continued breathing difficulties after a course of oral steroids. On July 23, 2018, Dr. Edinger noted that Hampton's PEFR was improved, but still diminished, and that he had a soft pleural rub in the base of the left lobe, which is seen in chronic lung disease. Thus, on July 23, 2018, Dr. Edinger ordered a pulmonary function test. Dr. Edinger next saw Hampton on October 3, 2018, upon his return to the institution following his pulmonary function test at an outside facility. The pulmonary function test indicated that Hampton had a mildly reduced total lung capacity but normal flow rates. The pulmonologist stated that the reduced lung capacity was likely due to reduced effort on Hampton's part or his weight.

It is against this factual backdrop that we consider the defendants' motion to dismiss or alternatively for summary judgment. In their motion, the defendants identify a host of legal obstacles to Hampton's continued pursuit of these claims. (Doc. 97). On this score, they contend that they are entitled to sovereign immunity and that because Hampton did not sue the United States as a proper FTCA defendant, this court lacks jurisdiction over his claims. In addition, they assert that Hampton failed to exhaust his administrative remedies with respect to his Bivens claim, and

5

that in any event, Hampton's Eighth Amendment claim fails on its merits. For the following reasons, it is recommended that the motion be granted and Hampton's complaint be dismissed.

## III.   Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have filed this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a

6

material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

<u>Id.</u> In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

### B. <u>Standard of Review--Motion to Dismiss Under Rule 12(b)(1)</u>

The defendants have also moved to dismiss Hampton's Federal Tort Claims Act (FTCA) claims pursuit to Rule 12(b)(1) of the Federal Rules of Civil Procedure

9

due to a lack of subject matter jurisdiction. Rule 12(b)(1) permits the dismissal of an action for "lack of subject matter jurisdiction." A motion to dismiss under Rule 12(b)(1) thus challenges the power of the court to hear a case or consider a claim. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When faced with a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction." Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000); see also Kehr Packages v. Fidelcor, Inc., 926 F. 2d 1406, 1409 (3d Cir. 1991) ("when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion").

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. See Morten v. First Fed. Sav. And Loan Ass'n, 549 F. 2d 884, 891 (3d Cir. 1997). First, a facial attack "contests the sufficiency of the pleadings." Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (quoting Taliaferro v. Darby Twp. Zoning Bd., 458 F. 3d 181, 187-88 (3d Cir. 2006). Such a facial challenge "attacks the complaint on its face without contesting its alleged facts, [and] is like a 12(b)(6) motion in requiring the court 'to consider the allegations of the complaint as true." Hartig Drug Company, Inc. v. Senju Pharmaceutical Co. Ltd., 836 F. 3d 261, 268 (3d Cir. 2006). Thus, in ruling on such a motion, the court assumes the truth of the allegations in the complaint but must analyze the pleadings to determine whether they state an action

that comes within the court's jurisdiction. United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F. 3d 506, 514 (3d Cir. 2016). A facial 12(b)(1) motion should be granted only if it appears certain that the assertion of subject-matter jurisdiction is improper. Kehr Packages, 926 F. 2d 1406, 1408-09 (3d Cir. 1991); Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa., 285 F. Supp. 3d 573, 577 (M.D. Pa. 2003).

In contrast, a "factual" attack on subject-matter jurisdiction asserts that, although the pleadings facially satisfy jurisdictional requirements, one or more allegations in the complaint is untrue, which therefore causes the action to fall outside the court's jurisdiction. Carpet Group, Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F. 3d 62, 69 (3d Cir. 2000); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1997). In ruling on factual challenges, a court must consider the merits of the disputed allegations, since "the trial court's . . . very power to hear the case" is in dispute. Mortensen, 549 F.2d at 891.

It is against these legal benchmarks that we assess the instant motion to dismiss, or in the alternative, for summary judgment.

## C. Hampton's Remaining Claims Should Be Dismissed

As we have noted, in their motion to dismiss, or in the alternative, for summary judgment the defendants have identified a host of legal obstacles to Hampton's continued pursuit of these claims. (Doc. 97). Upon consideration, we

11

agree that these remaining claims run afoul of insurmountable legal obstacles. Taken together, these legal obstacles compel the dismissal of this case. The legal hurdles to the pursuit of these claims, which combine to defeat Hampton's case, are discussed separately below.

### 1.   Hampton's FTCA Claims Fail.

In this case, the plaintiff seems to cast his complaint as both a Bivens constitutional tort action and as a lawsuit brought under the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq.* While the plaintiff may bring an FTCA action against the United States, to the extent that the plaintiff wishes to bring a Federal Tort Claims Act action in this lawsuit it is clear that he may not maintain that action against the individual federal official currently named in this complaint. Bivens constitutional tort actions and FTCA lawsuits have very different requirements in terms of the parties that may properly be named as defendants. With respect to inmate claims made under the FTCA, as a threshold matter, "[t]he FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated.  28 U.S.C. § 2674." Moshier v. United States, No. 05-180, 2007 WL 1703536, at *9 (W.D. Pa. June 11, 2007); Baker v. United States, No. 05-146, 2006 WL 1946877, at *4 (W.D. Pa. July 11, 2006). In this regard, "[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Government liable in tort as a private individual would be

12

under like circumstances.' " Sosa v. Alvarez-Machain, 542 U.S. 692, 700 (2004) (quoting Richards v. United States, 369 U.S. 1, 6 (1962)); CNA v. United States, 535 F.3d 132, 138 (3d Cir. 2008).

Federal district courts have jurisdiction over civil actions against the United States for damages, or

> [I]njury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). A person is permitted to sue under the FTCA to recover damages from the United States for personal injuries that he suffered during confinement in a federal prison that resulted from the negligence of a government employee. See Rinaldi v. United States, 2010 WL 2650528, at *4 (M.D. Pa. July 1, 2010) (Rambo, J.) (citing United States v. Muniz, 374 U.S. 150 (1963)).

However, due to the exclusive nature of the remedy available under the FTCA, and its jurisdictional prerequisites, a court may not entertain a civil suit for a claim cognizable under 28 U.S.C. § 1346(b) against "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1); see also FDIC v. Meyer, 510 U.S. 471, 476 (1994). As the Court of Appeals observed in affirming the dismissal of individual defendants from an inmate FTCA action: "The only proper defendant in an FTCA suit is the United States itself. The FTCA

waives the United States' sovereign immunity for claims arising out of torts committed by federal employees 'under circumstances where ... a private person ... would be liable' under applicable state tort law." Feaster v. Federal Bureau of Prisons, 366 F. App'x 322, 323 (3d Cir. 2010) (citing 28 U.S.C. §§ 2671, 1346(b)(1)). Therefore, when inmates bring actions against individual government officers for negligence under the FTCA the proper course to follow is to substitute the United States for these individual defendants and dismiss the individual defendants. Id.

In contrast to FTCA actions, which must be brought against the United States, Bivens constitutional tort lawsuits can only be lodged against individual government officials. Indeed, it is well-settled that Bivens actions against the United States— and, by extension, against federal agencies or officials sued in their official capacity—are barred by sovereign immunity, absent an explicit waiver of that immunity. Meyer, 510 U.S. at 483; Huberty v. United States Ambassador to Costa Rica, 316 F. App'x 120 (3d Cir. Aug. 21, 2008); Douglas v. United States, 285 F. App'x 955 (3d Cir. 2008); Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979); Bell v. Rossott, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States). Therefore, a Bivens action cannot be

14

brought against the United States, or a federal agency, since such claims are plainly barred by the doctrine of sovereign immunity.

These principles defining proper parties in <u>Bivens</u> and FTCA actions control here and compel dismissal of some of the claims currently lodged in this case. The plaintiff's complaint makes it unmistakably clear that the plaintiff is currently proceeding, in part, under the FTCA, and there appears to be no question that the individual defendants named in the complaint was acting within the scope of their employment with the Bureau of Prisons at the time of the incidents alleged. Accordingly, the United States of America is the only proper defendant with respect to these FTCA claims, and the individual defendants should be dismissed from these FTCA claims.

In addition, this FTCA claim encounters a separate legal hurdle. Hampton's FTCA claim arises in the context of workplace safety matters involving prison industries. In this setting, under the Inmate Accident Compensation Act (IACA), 18 U.S.C. § 4126(c)(4), Federal Prison Industries is authorized to employ its fund to pay "compensation to inmates . . . for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." The procedures governing "the payment of accident compensation [under § 4126], necessitated as the result of work-related injuries, to

federal prison inmates" are contained in the regulations at 28 C.F.R. Part 301. 28 C.F.R. § 301.101.

In United States v. Demko, 385 U.S. 149 (1966), the Supreme Court addressed the interplay between the FTCA and the IACA, noting that "compensation laws are practically always thought of as substitutes for, not supplements to, common-law tort actions." Id. at 151. Further, the Court determined that the compensation and coverage of § 4126, pursuant to its implementing regulations, "compare[d] favorably with compensation laws all over the country." Id. at 152. Accordingly, the Court ruled that § 4126 was the proper means of recovery for federal inmates' work-related injuries, exclusive of the FTCA. Id. at 153-54. Demko's holding is now explicitly incorporated into the regulations governing IACA claims, which state that inmates "subject to the provisions of these . . . regulations are barred from recovery under the [FTCA]." 28 C.F.R. § 301.319.

Accordingly, Hampton may not bring FTCA claims against individual government employees, as he endeavors to do in this case. Nor can Hampton pursue FTCA claims in a prison industry setting, as he attempts to do here, since Hampton's exclusive avenue for relief in this setting is the IACA, 18 U.S.C. § 4126(c)(4). Accordingly, Hampton's FTCA claims fail and should be dismissed.

### 2.    With Respect to Hampton's Workplace Claims, We May Not Imply a Bivens Remedy in this Context.

In addition, Hampton's Bivens constitutional tort claims, to the extent that they arise in the prison workplace setting, seem to run afoul of emerging legal principles defining this legal doctrine. Bivens constituted a narrowly defined, judicially crafted remedy for constitutional torts brought against federal defendants. However, as the Supreme Court has observed:

> [T]he Court has made clear that expanding the Bivens remedy is now a "disfavored" judicial activity. Iqbal, 556 U.S., at 675, 129 S.Ct. 1937. This is in accord with the Court's observation that it has "consistently refused to extend Bivens to any new context or new category of defendants." Correctional Services Corp. v. Malesko, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).

Ziglar v. Abbasi, 137 S. Ct. 1843, 1857, 198 L. Ed. 2d 290 (2017).

Adopting this cautious approach to the expansion of the Bivens doctrine, we have been instructed that:

> When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts? Bush, 462 U.S., at 380, 103 S.Ct. 2404.The answer most often will be Congress. When an issue " 'involves a host of considerations that must be weighed and appraised,' " it should be committed to " 'those who write the laws' " rather than " 'those who interpret them.' " Ibid. (quoting United States v. Gilman, 347 U.S. 507, 512–513, 74 S.Ct. 695, 98 L.Ed. 898 (1954)). In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if " 'the public interest would be served' " by imposing a " 'new substantive

17

legal liability.' " Schweiker, supra, at 426–427, 108 S.Ct. 2460 (quoting Bush, supra, at 390, 103 S.Ct. 2404). As a result, the Court has urged "caution" before "extending Bivens remedies into any new context." Malesko, supra, at 74, 122 S.Ct. 515.

Id.

Thus, after Ziglar, in order for a court to apply Bivens, the court must first decide if the case presents a new context for Bivens cases. The Supreme Court stated the test to determine if a case presents a new context in which a Bivens remedy is available:

> If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Ziglar, 137 S. Ct. at 1159-60.

If the case presents a new Bivens context, the court must then determine whether any alternative remedies exist since "the existence of alternative remedies usually precludes a court from authorizing a Bivens action." Id. at 1865. However, even absent an alternative remedy, if special factors exist which counsel hesitation in extending the Bivens remedy the court should decline to do so. Id. at 1859-60; see

18

also <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007); <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983). In this regard, these:

> [O]ther special factors that could be considered, include[e]: the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere"; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake.

<u>Bistrian v. Levi</u>, 912 F.3d 79, 90 (3d Cir. 2018).

In many ways <u>Ziglar</u> was a fundamental shift in the analytical paradigm used to assess <u>Bivens</u> claims, a shift which disfavored the extension of <u>Bivens</u> into new or different arenas. Mindful of this paradigm shift, as we view it Hampton's complaint brings two types of <u>Bivens</u> claims: a claim of medical deliberate indifference against Physician Assistant Ayers and a separate Eighth Amendment claim against his workplace supervisor Greg Jones.

As for Hampton's Eighth Amendment medical indifference claim, the courts have long recognized a <u>Bivens</u> cause of action in this specific context. <u>See</u> <u>Carlson v. Green</u>, 446 U.S. 14, 19 (1980). Therefore, a longstanding <u>Bivens</u> remedy exists as to this class of medical claim, although as discussed below we believe that this particular claim fails on the facts of this case.

19

However, Hampton's workplace safety <u>Bivens</u> claim expands the <u>Bivens</u> constitutional tort doctrine into a new, novel, and different factual context. Therefore, as to this <u>Bivens</u> claim, <u>Ziglar</u> requires us to determine whether any alternative remedies exist, and even absent an alternative remedy, if special factors counsel hesitation in extending the <u>Bivens</u> remedy.

In our view, this analysis calls for us to refrain from extending a <u>Bivens</u> remedy to prison workplace disputes. At the outset, we note that Congress has legislated in this field enacting the Inmate Accident Compensation Act (IACA), 18 U.S.C. § 4126(c)(4). With respect to federal inmates injured in the prison workplace the Supreme Court has already held that the IACA "presumably is the exclusive remedy to protect that group." <u>Demko</u>, 385 U.S. at 152. This finding under <u>Ziglar</u> typically precludes the fashioning of a <u>Bivens</u> remedy since "the existence of alternative remedies usually precludes a court from authorizing a <u>Bivens</u> action." <u>Ziglar</u> 137 S. Ct. at 1865. Further, the other special factors cited in <u>Ziglar</u> also weigh against extending a <u>Bivens</u> remedy into this field, where Congress has already spoken, and has elected to carefully define the scope of workplace liability for prison industries. Therefore, we recommend that this court join those courts that have declined to extend Bivens to this specific factual context. <u>Jones v. United States</u>, 2019 WL 3360644, at *8 (D.S.C. June 24, 2019), <u>report and recommendation adopted,</u> 2019 WL 3345997 (D.S.C. July 25, 2019); <u>Johnson v. Simpson</u>, 2019 WL

20

7284994, at \*2 (D.S.C. Feb. 11, 2019), report and recommendation adopted, 2019 WL 4784414 (D.S.C. Oct. 1, 2019), aff'd, 806 F. App'x 248 (4th Cir. 2020).

### 3.    In Any Event, Hampton's Bivens Claims Fail on Their Merits.

Moreover, in any event the Bivens claims advanced by Hampton fail on their merits. Turning first to Hampton's claims of medical deliberate indifference by Physician Assistant Ayers, such claims must meet exacting legal standards. While prison officials may also violate an inmate's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to an inmate's medical needs, in order to sustain such a claim, an inmate must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429

U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)

22

("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997) (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. See, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997) In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

23

Here the undisputed evidence reveals that Hampton was seen and treated for his bronchial complaints, both inside the prison and through a referral to outside physicians. This treatment belies any claim of medical deliberate indifference. Instead, it reflects at most a disagreement between an inmate and his care-givers regarding the source and severity of Hampton's medical condition. Such disputes do not rise to the level of a constitutional infraction. Accordingly, Hampton's medical deliberate indifference claim fails.

Likewise, any Eighth Amendment claim lodged against Defendant Jones, the prison shop supervisor, also fails on the facts of this case. While the Eighth Amendment paradigm that would apply in this setting is not entirely clear, this Eighth Amendment claim could be seen as either a failure to protect claim or a conditions of confinement claim. Both claims require a precise and compelling showing.

"When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'" Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994) and Hudson v. McMillian, 503 U.S. 1, 9 (1992)). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003). Thus, these claims also require proof of a both culpable state of mind and objective proof of physical conditions of confinement which shock the conscience and depart from minimal civilized standards of life's necessities. In the same vein, proof of a culpable subjective intent is a critical component of an Eighth Amendment failure-to-protect claim. The leading case in the Third Circuit addressing deliberate indifference in this prison context is found in Beers-Capitol. In Beers-Capitol, the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Beers-Capitol, 256 F.3d at 125 (quoting Farmer, 511 U.S. at 834). Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." Id.

25

In this case, the evidence indicates that Hampton received prison industry health and safety training and was offered protective gear. The undisputed facts also indicate that Hampton's exposure to hazardous materials was sporadic and took place in a well-ventilated setting. All of this undisputed evidence militates against any finding of deliberate indifference by Defendant Jones to Hampton's exposure to immediate perils and defeats any Eighth Amendment claim Hampton wishes to pursue in this setting.

### 4.    <u>The Defendants Are Entitled to Qualified Immunity.</u>

Finally, we conclude that the defendants are entitled to qualified immunity in this case. As we have explained:

> The doctrine of qualified immunity shields governmental officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Mullenix v. Luna</u>, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam).
>
> The qualified immunity inquiry has two parts. The first asks whether the plaintiff has alleged sufficient facts to "make out a violation of a constitutional right." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The second question is "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." <u>Id.</u> (internal quotation marks omitted). A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." <u>Pearson</u>, 555 U.S. at 236, 129 S.Ct. 808.
>
> A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing

26

violates that right.' " <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ) (alterations in original). "If no case speaks directly to the legality of the officer's conduct, the challenged conduct [needs] to be such that reasonable officers in the defendant['s] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." <u>Geist v. Ammary</u>, 40 F.Supp.3d 467, 485 (E.D. Pa. 2014) (citing <u>Giuffre v. Bissell</u>, 31 F.3d 1241, 1255 (3d Cir. 1994) ) (internal quotations omitted).

Qualified immunity is intended to immunize governmental officials from liability except in those cases where it would be objectively unreasonable for officers to believe that their conduct was warranted. As the Third Circuit recently observed, "[t]hat threshold is a high one." <u>Thompson v. Howard</u>, 679 Fed.Appx. 177, 181 (Feb. 2017). The doctrine exists because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly" believe that their actions are justified and permissible. <u>Anderson</u>, 483 U.S. at 641, 107 S.Ct. 3034. Qualified immunity thus "gives ample room for mistaken judgments" and "protect[s] all but the plainly incompetent or those who knowingly violate the law." <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248, 254 (3d Cir. 2010) (internal quotation marks and citations omitted). For that reason, qualified immunity applies unless it is "beyond debate" that an officer acted unreasonably, <u>Mullenix</u>, 136 S.Ct. at 309, and unless "every reasonable official would [have understood] that what he [was] doing violate[d]" the right at issue. <u>Reichle v. Howards</u>, 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and citation omitted) (first alteration in original). As the Supreme Court clarified, while "[w]e do not require a case directly on point, ... existing precedent must have placed the statutory or constitutional question beyond debate." <u>Mullenix</u>, 136 S.Ct. at 308.

<u>Von Schlichten v. Mooney</u>, 2018 WL 3707326, at *13 (M.D. Pa. Aug. 3, 2018), <u>aff'd,</u> 784 F. App'x 58 (3d Cir. 2019).

In this case, given the uncertainty regarding the application of <u>Bivens</u> to the prison workplace, as well as the workplace training and medical treatment received

27

by Hampton, the defendants simply could not have anticipated that their actions would have violated the clearly established constitutional rights of the plaintiff. Therefore, the defendants are entitled to qualified immunity and Hampton's claims should be dismissed.[2]

## IV.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendants' motion for summary judgment (Doc. 97) be GRANTED, and that the plaintiff's complaint be dismissed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before

---

[2] The defendants have also raised a PLRA exhaustion defense. Because we find that Hampton's claims fail on other grounds, and because there is some factual confusion and uncertainty surrounding the guidance Hampton received regarding the steps he needed to take to exhaust his claims, we do not reach this issue.

the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2d day of August 2021.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge